*433 OPINION.
Maequette : These proceedings involve the income-tax liability for the years 1920 and 1921 of four men and their respective wives. Four issues are raised by the pleadings, three of which are found only in the cases of J. C. Pugh, Sr., and Mrs. J. C. Pugh. The other issue is common to all of the cases. It appears to be accepted by the parties that the incomes on which the taxes are based .were community incomes and were reported on that basis.
*434 The first issue is whether J. C. Pugh, Sr., and his wife are entitled to any deduction from their income for 1920 on account of damage to or a loss of value in the Petrovic Plantation, which damage or loss was due to the fact that the land became impregnated with oil and salt water from oil wells drilled thereon, and covered with a growth of noxious weeds and grasses, thereby rendering it permanently less fitted for cotton and other crops, to the production of which it had theretofore been devoted. It appears to be fairly established by the evidence that the plantation, which had been acquired by J. C. Pugh, Sr., prior to March 1,1913, had a fair market value of $105,000 on that date. It also has been established that in 1919 oil was discovered underlying the plantation and that in the latter part of 1919 and in the year 1920 oil wells were drilled, the larger part of the development occurring in 1920. Oil and salt water from these wells impregnated the land and caused the growth of coco grass, Johnson grass, and other noxious grasses and weeds, so that the plantation was rendered permanently less fitted for the production of cotton and other crops which had theretofore been raised thereon, and that the fair market value of the surface rights of the plantation in 1920, as distinguished from the mineral rights, was reduced by at least $50,000. We are, however, unable to find any reason or author-ity for allowing the deduction claimed. Granting that the usefulness of the plantation for agricultural purposes has been permanently impaired, it does not follow that a deductible loss .has been sustained. There was a shrinkage in fair market value, but such shrinkage in value does not give rise to a deductible loss, any more than an increase in such value gives rise to income. Until there has been a sale or other disposition of the property it is impossible to say whether a gain or loss will be sustained. In Weiss v. Wiener, 279 U. S. 333, this theory was expressed as follows: “The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer. They do not charge for appreciation of property or allow for a loss from a fall in market value unless realized in money by a sale.” In our opinion Pugh and his wife sustained no deductible loss within the meaning of the Revenue Act of 1918.
The evidence herein also shows to our satisfaction that J. C. Pugh, Sr., sold on his own account, in the year 1920, certain cotton for which he received $4,320. The respondent has increased the amount of such sales to $13,181.30. It appears that other cotton was in fact sold by Pugh, but that it was not for his own account but for the accommodation of other persons, and that he was not entitled to the proceeds. Mrs. Pugh testified positively that the cotton sold by J. C. *435 Pugh, Sr., on his own account, brought only $4,320. On this point we sustain the petitioners.
The third question is whether J. C. Pugh, Sr., was entitled to deduct any amount for depletion of the mineral rights covered by the written instrument executed by him and witnessed on August 1, 1919. The respondent denies that Pugh was entitled to any allowance for depletion of that interest, on the ground that he conveyed the entire interest to Eastham on August 1, 1919. The petitioners contend that Pugh and Eastham intended that the conveyance to • Eastham should cover only the interest remaining after Pugh had received $200,000 in royalties and that Pugh was the owner of the mineral rights until they had been depleted to that extent. We do not agree with that contention. In the case of H. C. Walker, Jr., et al., 6 B. T. A. 1142, the same contention was made by the petitioner relative to the effect of a written instrument which, in its essentials, is practically identical with the instrument executed by Pugh and Eastham. In holding adversely to the petitioners, we stated:
The contract between the petitioners and West on one side, and Foster, Looney & Wilkinson on the other, refers to the petitioners and West as “ vendors ” and to Foster, Looney & Wilkinson as “ vendees,” which term we adopt for the purpose of this opinion. It recites that in consideration of $200,000, to be paid entirely out of the oil produced on the tract of land described in the contract “ the said H. O. Walker, Jr., and Elias Goldstein do sell, transfer and convey unto the aforesaid vendees the excess royalties of one twenty-fourth (⅛) of all the oil, gas and other minerals, reserved for them under the aforesaid lease * *
Petitioners claim that we should disregard the words used in the contract and look to its substance, and that when so viewed it was not a contract of sale but that under it their rights as lessors were continued until they had received $200,000 out of the oil and that by the contract the petitioners and George West were recognized as the owners of the one-sixteenth royalty interest which was the subject of the contract. These contentions are not borne out by the recitals and the provisions of the contract. It clearly appears that the vendors and vendees were claiming under adverse titles, and that the purpose of the agreement was not to recognize the rights of each other, but to settle the controversy by a compromise of that which had theretofore been contested. The sum of $200,000 was “ to be paid entirely out of the oil produced from the above described tract of land, either by the lessees of the said George West and their assigns, or by the lessees of the said Lillie G. Taylor, and their assigns, and accruing to the credit of the undivided one-sixteenth (1/16) interest that is vested in the said vendees by reason of the purchase above referred to by them from the said Lillie G. Taylor on the one hand, and by reason of their purchase from the said vendors under this contract on the other hand.”
It thus appears that the $200,000 was not payable to the petitioners and West out of their interest in the oil, but was payable out of the interest of the ven-dees, which they had acquired from Lillie G. Taylor, and from the petitioners and West.
*436 Putting aside the fact that the contract uses the words “ sell, transfer and convey,” and the words “ vendors ” and “ vendees,” and looking to the substance of the contract alone, the conclusion can not be escaped that the contract was a contract of sale which divested the taxpayers and West of all interest in the property therein referred to, and vested eo mstanti the title thereto in the vendees for the consideration of $200,000 payable out of the royalties the contract for which was assigned to the vendees. Such being the case, the respondent did not err in refusing to allow the petitioner a deduction for depletion.
We are of opinion that the instrument under consideration was a contract of “ sale to be operative from the first day of August 1919,” and that Pugh was on that day divested of the title to the property described in the instrument and that the respondent did not err in refusing to allow him deductions for depletion thereof in 1920 and 1921.
The last question is whether the several petitioners are entitled to deduct from gross income in the years 1920 and 1921, any amount for the depletion of the mineral rights covered by the donation deed executed by Pugh, Sr., on July 12, 1920. The respondent denies the right of the petitioners to this deduction, on the ground that the property was held in trust, the income to be collected and distributed by a trustee, and that the deductions for depletion should be allowed only to the trust as an entity. The petitioners also proceed on the theory that the property was held in trust for them. We think, however, that the instrument of July 12, 1920, merely created an agency, and that the petitioners, as the owners of the property, are entitled to allowances for depletion according to their respective interests.
Reviewed by the Board.

Judgment will be entered under Bule 50.